**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| THE MECHANICAL CONTRACTORS ASSOCIATION OF NEW JERSEY, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF NEW JERSEY, et al., <br><br> Defendants. | Civil Action No. 3:19-cv-18976 (FLW) <br><br> **OPINION** |

**WOLFSON, Chief Judge:**

Plaintiffs, the Mechanical Contractors Association of New Jersey, Inc. ("MCANJ"), and MMC Contractors, sue the State of New Jersey, the New Jersey Attorney General, and the New Jersey Division of Consumer Affairs (collectively, "Defendants") for Equal Protection, Due Process, Privileges and Immunities, and Commerce Clause violations. Plaintiffs challenge a 1% ownership requirement to register as a "bona fide representative" for a heating, ventilating, air conditioning, and refrigeration ("HVACR") contractor, which is necessary for the contractor to work in the State. *See* N.J.S.A. § 45:16A-2. Before the Court are cross-motions for summary judgment. For the following reasons, Plaintiffs' motion is **DENIED**, Defendants' motion is **GRANTED**, and all claims are **DISMISSED**.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

MCANJ is a trade association representing HVACR contractors. *See* Pl. Statement of Undisputed Material Facts ("SUMF"), ¶ 1. MMC is a national contractor specializing in large-scale HVACR projects. *Id.* ¶¶ 2-3. Defendants are various State entities. *Id.* ¶ 2. In 2007, the New

Jersey Legislature passed the Heating, Ventilation, Air Conditioning and Refrigeration License Law, which comprehensively regulates HVACR contractors. *See* N.J.S.A. § 45:16A-1, *et seq*. Relevant here, the Act requires any contractor performing HVACR work in New Jersey to appoint a "licensed Master" as a "bona fide representative." *See id.* § 45:16A-2. At the time it was passed, a bona fide representative:

> in the case of a sole proprietorship, was the owner of the business; in the case of a partnership, was a partner in the business; in the case of a limited liability company, was a manager; or in the case of a corporation, was an executive officer.

*Id.* The bona fide representative accepts service of process within New Jersey, *id.* § 13:32A-5.2(a)(2), and consents to liability for monetary penalties arising out of shoddy work or delays on behalf of the contractor. *Id.* § 13:32A-5.2(a)(3).

In 2018, the Legislature amended the definition of bona fide representative to mean a "licensed Master":

> who has not less than one percent ownership of the issued and outstanding stocks in a corporation, or not less than one percent ownership of the capital of a partnership, or not less than one percent ownership of any other legal entity engaged in HVACR contracting in this State.

*Id.* § 45:16A-2. According to Plaintiffs, Governor Murphy signed the amendment to "protect consumers by ensuring that companies performing work in New Jersey have a sufficient nexus with our State and are readily accessible and responsive to customers they serve here." Pl. Br., at 18; Pl. SUMF, ¶ 52. Besides this statement, Plaintiffs claim, there was no evidence before the Legislature "demonstrating how adding an ownership requirement . . . protects the health, safety and welfare of the public in a way that the prior licensing requirement [did not]." Pl. SUMF, ¶ 61. Instead, Michael Maloney, President of the New Jersey State Pipe Trades, gave the following testimony to the Assembly Regulated Professions Committee to justify the amendment:

There is no accountability among the [bona fide representatives]. A company can change their [bona fide representative] like he or she changes their shirts. When ownership is involved, it's a whole different ball game. Now the BFR has stock in the company in this this proposal it is only 1% and not 10% and it is only a matter of time before big box stores, of which I will not name, will . . . be able to solicit anyone who is licensed to act as their BFR and in that scenario would wipe out the mom and pop . . . HVACR contractors . . . . Along with ownership requirements, you now have someone who is responsible for the company's actions, good or bad. By the way, for your information, the 10% ownership requirement for the plumbing contractor law has been around since 1968 and it works.

*Id.*

In the same bill, the Legislature exempted companies whose business is *not* primarily HVACR work (as defined by a percentage of revenue) and publicly traded companies from the ownership requirement:

A "bona fide representative" means, with respect to a corporation, partnership, or other firm or legal entity engaged in HVACR contracting in this State which generates more than 65 percent of its gross revenue from sources other than HVACR contracting, or with respect to a publicly-traded corporation, including its wholly-owned subsidiaries, whose principal business in this State is HVACR contracting: in the case of a sole proprietorship, the owner; in the case of a partnership, a partner; in the case of a limited liability company, a manager; or in the case of a corporation, an executive officer.

N.J.S.A. § 45:16A-2. Governor Murphy purportedly justified the exemptions on the grounds that "the magnitude, presence, and resources of [ ] large, publicly-traded corporations ensure that they will be accessible and accountable to New Jersey consumers." *See* Pl. SUMF, ¶ 53.

Plaintiffs sued on October 15, 2019, contending that the ownership requirement is unconstitutional under the Equal Protection Clause, Due Process Clause, Privileges and Immunities Clause, and Commerce Clause. *See* ECF No. 1; Pl. SUMF, ¶ 6. Plaintiffs moved for summary judgment one year later on all claims, *see* ECF No. 21, which Defendants answered with a cross-motion seeking to dismiss the Complaint. *See* ECF No. 22. In Plaintiffs' view, the ownership requirement irrationally blocks "licensed Masters" who do not own at least 1% of an

HVACR contractor from registering as a bona fide representative, treats out-of-state HVACR contractors and "licensed Masters" differently than in-state ones, and unduly restricts interstate commerce. *See* Pl. Br., at 2-4. Defendants argue that the ownership requirement is rationally related to legitimate state interests, imposes "identical requirements" on residents and nonresidents, and presents no "local obstacle" to national trade. *See* Def. Br., at 6.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any, . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (quotations omitted); Fed. R. Civ. P. 56(a). An issue is "genuine" when "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is "material" when it "might affect the outcome of the suit under the governing law." *Id.* The court construes all facts in the light most favorable to the nonmoving party, *see Boyle v. Cty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998), whose evidence "is to be believed," and makes "all justifiable inferences . . . in [its] favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004); *see also Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex*, 477 U.S. at 323. That party may discharge its burden by "showing — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2001) (quotations and citations omitted). The nonmoving party must then identify, by affidavits or otherwise, specific

facts showing that there is a triable issue. *Celotex*, 477 U.S. at 324. To do so, the nonmoving party "may not rest upon the mere allegations or denials of the . . . pleading[s]." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quotations omitted). Instead, "[it] must make a showing sufficient to establish the existence of [every] element essential to [its] case, and on which [it] will bear the burden of proof at trial." *Cooper v. Sniezek*, 418 Fed. App'x. 56, 58 (3d Cir. 2011) (quotations and citations omitted). "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, [it] must be more than a scintilla," *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005), and conclusory declarations, even if made in sworn statements, will not suffice. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

## III.    DISCUSSION

Plaintiffs challenge the 1% ownership requirement under various constitutional provisions: Equal Protection because it provides part-owner "licensed Masters" with preferential treatment; Due Process because it prevents non-owner "licensed Masters" from pursuing their profession; Privileges and Immunities because it imposes a restriction not common to any other state; and, finally, the Commerce Clause because it burdens interstate commerce. I address each in turn.

### A.  Equal Protection Claim

#### i.    Standard of Scrutiny

The Fourteenth Amendment prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV. "The purpose . . . is to secure every person within the State's jurisdiction against . . . arbitrary discrimination." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citations omitted). Where a statute intentionally singles out an "identifiable group" based on a protected characteristic, such as race, it is subject to

strict scrutiny. *Gratz v. Bollinger*, 539 U.S. 244, 270 (2003). Where a statute draws lines based on a "quasi-suspect" characteristic, such as sex, it is subject to intermediate scrutiny. *Clark v. Jeter*, 486 U.S. 456, 461 (1988). Where a statute neither "burdens a suspect group or a fundamental interest," *Vance v. Bradley*, 440 U.S. 93, 96-97 (1979), as here, it is subject to rational basis review. *Romer v. Evans*, 517 U.S. 620, 632 (1996); *Hassan v. City of New York*, 804 F.3d 277, 298 (3d Cir. 2015). Both parties acknowledge rational basis as the applicable test.

Rational basis review is "very deferential," *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 156 (3d Cir. 2018), and "a paradigm of judicial restraint." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). "The general rule is that legislation . . . will be sustained if [it is] rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985) (citations omitted). "Any reasonably conceivable state of facts" will do, and there is a "strong presumption validity." *Heller v. Doe*, 509 U.S. 312, 319-20 (1993); *Allied Stores of Ohio, Inc. v. Bowers, Inc.*, 358 U.S. 522, 528 (1959) (stating that this has "long been settled" even where a classification is otherwise "discriminatory"). It is also "entirely irrelevant" whether the "conceived" facts or reasons "actually motivated the legislature" when it passed the law, *Beach*, 508 U.S. at 515, or have "a foundation in the record," *Heller*, 509 U.S. at 321, and "those attacking the . . . [legislation] have the burden 'to negative every conceivable basis which might support it.'" *Id.* (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)). Not only that, "a legislature . . . [need not] actually articulate at any time the purpose or rationale supporting its classification," *Nordlinger v. Hahn*, 505 U.S. 1, 15 (1992); *United States Railroad Retirement Bd. v. Fritz*, 449 U.S. 166, 179 (1980) ("[T]his Court has never insisted that a legislative body articulate its reasons for enacting a statute."), the absence of "legislative facts" explaining a classification "has no significance," *Nordlinger*, 505 U.S. at 15, and courts almost always "accept at face value

. . . rationales constructed after the fact." *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 237-38 (3d Cir. 1987). A legislature's decision to write a classification into a statute, in short, is not subject to any "courtroom fact-finding," but may be based on rational *post-hoc* "speculation unsupported by evidence or empirical data." *Beach*, 508 U.S. at 515; *Vance*, 440 U.S. at 111; *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464 (1981).

Courts must be highly deferential because rational basis review "is not a license . . . to judge the wisdom, fairness, or logic of legislative choices," *Heller*, 509 U.S. at 319, or to act as a "superlegislature," *New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) *(*per curiam), and "judicial intervention is generally unwarranted no matter how unwisely [a court] may think a political branch has acted." *See Vance*, 440 U.S. at 97. "Only by faithful adherence to this guiding principle . . . is it possible to preserve to the legislative branch its rightful independence and its ability to function." *Lehnhausen*, 410 U.S. at 364 (quotations and citation omitted). For these reasons, "it should come as no surprise that the Court hardly ever strikes down a policy as illegitimate under rational basis scrutiny." *Trump v. Hawaii*, 138 S. Ct. 2392, 2420 (2018). "On the few occasions [the Court] ha[s] done so, a common thread has been that the laws at issue lack any purpose other than a 'bare . . . desire to harm a politically unpopular group.'" *Id.* (quoting *Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973)) (omission in original); *Romer*, 517 U.S. at 634 (striking down a law because "its sheer breadth [was] so discontinuous with the reasons offered for it" that it seemed "inexplicable by anything but animus"). A state is entitled to especially "wide latitude" over social and economic policy because "[t]he Constitution presumes that even improvident decisions will eventually be rectified by democratic processes." *City of Cleburne*, 473 U.S. at 440.

ii.   Application

Turning to the present case, New Jersey's 1% ownership requirement survives rational basis review, and does not fit the pattern or circumstances the Supreme Court has emphasized in striking down statutes.[1] Defendants, first, assert various legitimate state interests. One interest is "to quell the amount of [] unlicensed practice complaints" for HVACR contractors, of which there were apparently 39 between 2016 and 2020. Def. Br., at 9-10, Exs. A-B. Another interest is to "provide greater accountability" and deter "license lending." *Id.* at 10. The Legislature also sought to encourage "greater oversight and supervision," particularly in light of 552 alleged complaints against HVACR contractors "under the previous definition of bona fide representative." *Id.* at 10-11, Exs. A-B; *id.* at 14 ("The New Jersey Legislature sought to deal with an ongoing public health, safety and welfare concern by incentivizing a bona fide representative, via an ownership requirement, to provide greater oversight and assume the requisite supervision concerning the practice of HVACR contracting."). And it appears that New Jersey has for decades required plumbers to maintain a 10% ownership stake in a contractor, which has purportedly resulted in fewer total complaints compared to electricians, for whom no such requirement exists. *Id.* at 22 n.4.

Plaintiffs do not claim that these interests are necessarily illegitimate. They instead insist that the ownership requirement is not rationally related to them. While their concern is that some "licensed Masters" will be unable to register as bona fide representatives going forward, and some contractors will be unable find such representatives in order to do business in New Jersey, that potentiality does not render the License Law unconstitutional under Equal Protection principles.

---

1    The first step in any Equal Protection case is to identify the challenged classification. *See Murillo v. Bambrick*, 681 F.2d 898, 906 (3d Cir. 1982) (stating that a court must "identify with particularity the precise classification alleged to be irrational"). That is straightforward here: the face of the statute distinguishes between non-owner "licensed Masters" and "licensed Masters" with a 1% stake or more in an HVACR contractor.

As Defendants observe, the ownership requirement bears a discernable "relationship to legitimate state interests," *Trump*, 138 S. Ct. at 2421, and cannot be deemed "divorced from any factual context," *Romer*, 517 U.S. at 637, because it may encourage employees to advance the goals of the HVACR contractor for which they are an agent above other, competing ends. For example, the law could provide a "disincentive" to license lend, which HVACR contractors presumably wish to mitigate so as not to lose customers or generate complaints to the State Board, or a financial incentive to respond more effectively to consumer concerns impacting the business.

This is essentially the logic behind all equity-based compensation schemes, which can reduce agency costs by aligning employee and company interests. *See, e.g.*, *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 814 (N.D. Ohio 1999) (describing, in the context of lead plaintiff motions in a class action, how "divergence of financial interests creates significant agency costs"); Michael C. Jensen & William H. Meckling, *Theory of the Firm: Managerial Behavior, Agency Costs and Ownership Structure*, 3 J. FIN. ECON. 305, 308 (1976) (explaining that "[t]he principal can limit divergences from his interest by establishing appropriate incentives for the agent . . . to limit the aberrant activities of the agent," such as stock compensation) (emphasis omitted). Plaintiffs may strongly disagree with the theory that part ownership improves performance and efficiency, or firmly believe that in these circumstances it will not achieve the consumer protection the Legislature intends. Assuming *arguendo* that Plaintiffs' position has some merit, it is nonetheless not a reason to strike down the statute, as states "are not required to convince the courts of the correctness of their legislative judgments," particularly in non-sensitive social/economic areas such as this. *Clover Leaf*, 449 U.S. at 464. Simply, I may only "look behind the face of the [statute] to the extent of applying rational basis review," *Trump*, 138 S. Ct. at 2420, which does not reach the merits of a legislature's policy choices, *Heller*, 509 U.S. at 319, or the effectiveness

of its judgments in that arena, *see Harold v. Richards*, 334 F. Supp. 3d 635, 643 (E.D. Pa. 2018), and I am "compelled under rational-basis review to accept [ ] generalizations even when there is an imperfect fit between means and ends." *Heller*, 509 U.S. at 321; *Metropolis Theatre Co. v. Chicago*, 228 U.S. 61, 69-70 (1913) ("The problems of government are practical ones and may justify, if they do not require, rough accommodations."). Beyond even that, the fact that the assumptions underlying Defendants' rationale are disputed is fatal to Plaintiffs' position that the License Law is irrational. *See, e.g.*, *Clover Leaf*, 449 U.S. at 469 ("Since in view of the evidence before the legislature, the question clearly is at least debatable, the Minnesota Supreme Court erred in substituting its judgment for that of the legislature.") (quotations and citation omitted); *Doe v. Pa. Bd. of Prob. & Parole*, 513 F.3d 95, 117 (3d Cir. 2008) (Ambro, J., dissenting) ("If the question is at least debatable, the Commonwealth's classification survives rational basis review.") (quoting *Clover Leaf*).

Stated differently, it is conceivable that the Legislature designed the ownership requirement to invest bona fide representatives in the pecuniary success of the HVACR contractor with which they are associated, on the belief that such a compensation structure will (1) preempt problems that arise when the contractor and the representative have different incentives/interests, (2) check potential self-dealing, laziness, or incompetence, (3) use the unique information the bona fide representative has to the benefit of the HVACR contractor on the whole, (4) ensure contractors hire good stewards or fiduciaries, since they will be unlikely to give just any "licensed Master" a financial stake in their company, and (5) reduce complaints to the State.[2] Between "opposed views

---

2      Perhaps, also, the Legislature adopted the ownership requirement for bona fide HVACR representatives for the same reasons as plumbers in 1987. *See Beach*, 508 U.S. at 317 ("Congress borrowed § 602(7)(B) from pre-Cable Act regulations, and although the existence of a prior administrative scheme is certainly not necessary to the rationality of the statute, it is plausible that Congress also adopted the FCC's earlier rationale.").

of public policy," the Legislature here determined that citizens in need of HVACR services will be better served by this arrangement, and I cannot second-guess that logic, even if it were flawed. *Accord N. Dakota State Bd. of Pharmacy v. Snyder's Drug Stores, Inc.*, 414 U.S. 156, 166-67 (1973) ("A standing criticism of the use of corporations in business is that it causes such business to be owned by people who do not know anything about it. Argument has not been supposed to be necessary in order to show that the divorce between the power of control and knowledge is an evil . . . . it still would be possible for a stockholder . . . to take no hand in the company's affairs. But obviously he would be more likely to observe the business with an intelligent eye.").

At this point, my inquiry could be at "its end." *Beach*, 508 U.S. at 314; *Hancock Indus.*, 811 F.2d at 237. I will nevertheless explain why Plaintiffs' arguments fall under their own weight. In general, Plaintiffs do not "apply anything resembling rational basis review," but something far more searching. *Trump*, 138 S. Ct. at 2421. Plaintiffs begin by poking holes in the "license lending" statistics on which Defendants rely. *See, e.g.*, Pl. Rep. Br., at 4-5. Whatever the merits of their critique, under rational basis review, I must take Defendants' factual assumptions at face value, not scrutinize their data to determine whether it *really* warrants a policy change or *actually* supports the inference that stock ownership will reduce complaints about HVACR contractors. *See, e.g.*, *Alexander v. Whitman*, 114 F.3d 1392, 1406 (3d Cir. 1997) (holding that the only permitted inquiry "is whether the legislature rationally might have believed that the predicted reaction would occur or that the desired end would be served"). "A State [] has no obligation to produce evidence to sustain the rationality of a statutory classification" anyway, *Heller*, 509 U.S. at 320, and the relevant question where such evidence exists is not whether the "disputed [ ] fact is more likely than not to be true," as Plaintiffs wish, but whether it could "reasonably be conceived to be true by the governmental decisionmaker." *Vance*, 440 U.S. at 99.

Plaintiffs next argue that the procedures to become a "licensed Master" guarantee the same level of consumer protection as the ownership requirement, making it redundant. *See* Pl. Br., at 19. Similarly, Plaintiffs argue that New Jersey already imposes personal liability on "licensed Masters," *see* N.J.S.A. § 13:32A-5.3(a)(4), which achieves the same goal as the ownership requirement: a strong financial incentive to do good work. Pl. Br., at 19-20. Even if Plaintiffs are correct that the ownership requirement imposes an unnecessary barrier to entry without a corresponding public benefit, that does not suffice under rational basis review. A legislative action is not irrational simply because legislators take a "belt and suspenders" approach to a perceived problem. *See, e.g.*, *Luft v. Evers*, 963 F.3d 665, 677 (7th Cir. 2020) ("[A statute does not lack a rational basis], as the district judge believed, because redundant requirements in statutes—such as current ID + proof of enrollment—are invariably irrational. Many a lawyer prefers a belt-and-suspenders approach."); *United States v. Carona*, 660 F.3d 360, 368-69 (9th Cir. 2011) ("That some wear a belt and suspenders does not prove the inadequacy of either to hold up the pants, but only the cautious nature of the person wearing the pants.") (citation omitted); *Pena v. Lindley*, 898 F.3d 969, 981 (9th Cir. 2018) (calling this "just good, old-fashioned common sense"). The same is true for Plaintiffs' contention that the ownership requirement produces "job disenfranchisement" for bona fide representatives who have acted as agents for HVACR contractors for years without incident. *See* Pl. Br., at 22. That may indicate an "unwise" policy but certainly not irrationality through the lens of the Equal Protection Clause. The problem is, "[w]hile different [ ] requirements might also further [the State's] valid goals, it is for the legislature, not the courts, to balance the advantages and disadvantages." *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 487 (1955). A state law may even "exact a needless, wasteful requirement," as Plaintiffs allege here, without violating rational basis. *Id.*

Plaintiffs next argue that Defendants *in fact* designed the ownership requirement to protect "mom and pop" HVACR contractors and punish "big box stores." *See* Pl. Br., at 18. This also does not suffice to strike down the statute. As a rule, "the court has no occasion to inquire into the subjective motives of the decisionmakers." *Hancock Indus.*, 811 F.2d at 237-38. "The court will only inquire deeper where circumstances suggest that the legislators could not possibly have been motivated by the proffered purpose." *Associated Builders & Contractors, E. Pennsylvania Chapter, Inc. v. Cty. of Northampton*, 376 F. Supp. 3d 476, 498 (E.D. Pa. 2019), *aff'd sub nom.*, 808 Fed. App'x. 86 (3d Cir. 2020). The Supreme Court has overturned statutes before on this basis, if there are clear discrepancies between the face of the legislative history and the government's litigation position. *See, e.g.*, *Clover Leaf*, 449 U.S. at 463 n.7; *Moreno*, 413 U.S. at 536; *Weinberger v. Wiesenfeld*, 420 U.S. 636, 648 n.16 (1975); *Jimenez v. Weinberger*, 417 U.S. 628, 634 (1974); *Eisenstadt v. Baird*, 405 U.S. 438, 449 (1972).

Plaintiffs here do not point to any circumstances that "force" me to doubt Defendants' stated interests in this litigation. *Clover Leaf*, 449 U.S. at 463. First, Governor Murphy's signing statement in which he emphasized a "nexus" between bona fide representatives and New Jersey so as to enhance responsiveness and accessibility is not a stand-in for legislative intent. *See Gibson v. Superintendent of New Jersey Dep't of L. & Pub. Safety-Div. of State Police*, No. 02-5470, 2009 WL 900854, at *4 (D.N.J. Mar. 31, 2009) ("[S]igning statements need not be afforded significant weight in an analysis of legislative history."). Even if I took the Governor's statement to reflect the Legislature's intentions, and considered it on this motion to that extent, its substance arguably supports, rather than belies, Defendants' litigation position, which by definition means that the License Law survives rational basis review. *Accord Vance*, 440 U.S. at 112 ("[T]he very fact that [facts] are 'arguable' is sufficient, on rational-basis review, to 'immuniz[e]' the [legislative] choice

from constitutional challenge."); *Hancock Indus.*, 811 F.2d at 238 ("[I]t is not enough for one challenging a statute on equal protection grounds to introduce evidence tending to support a conclusion contrary to that reached by the legislature."). The same is true of Maloney's testimony before the Assembly Regulated Professions Committee in which he stated that the ownership requirement would bring "accountability" to bona fide representatives, prevent HVACR contractors from changing their "licensed Masters" "like . . . their shirts," discourage "big box stores" from simply "solicit[ing] anyone who is licensed," which would hurt "mom and pops," and ensure "licensed Masters" are "responsible for the company's actions." Pl. SUMF, ¶ 61. Not only is it speculative to attribute committee testimony from a witness to the Legislature on the whole, but the substance of Maloney's statements can be squared with Defendants' litigation position.

Third, even if I granted interpretive weight to both the Governor's and Maloney's comments, assumed further that they contradict Defendants' stated interests, and accepted that they constitute the Legislature's real goals, Plaintiffs would still fail to sustain their burden. Under rational basis review, it is not enough to point to another potential reason for a law. Plaintiffs must show that Defendants' *purported* reason is "not even a conceivable basis." *Associated Builders*, 375 F. Supp. 3d at 496. The fact that Defendants were possibly motivated by other factors does not establish that Defendants' alleged purposes are inconceivable.

Additionally, Plaintiffs argue that Defendants have not sustained their burden of proof, stating repeatedly that Defendants "completely failed to show how a 1% ownership requirement will protect the public health, welfare, and safety." Pl. Br., at 19. But Plaintiffs are mistaken as to which party bears the burden on rational basis review. Defendants need not explain to the Court why their ownership requirement passes constitutional muster. Plaintiffs must explain why it does not. *See, e.g.*, *Archer v. York City Sch. Dist.*, 227 F. Supp. 3d 361, 377 (M.D. Pa. 2016), *aff'd*, 710

Fed. App'x. 94 (3d Cir. 2017) ("Plaintiffs' evidence must indicate that Defendants' actions were not rationally related to *any* legitimate government purpose."); *Montanye v. Wissahickon Sch. Dist.*, 327 F. Supp. 2d 510, 520 (E.D. Pa. 2004) ("[Plaintiffs] will have to offer an ascending quantum of proof [at summary judgment] that defendants' actions were not rationally related to a legitimate government purpose.").

Plaintiffs' remaining arguments are all equally unconvincing. They stress that "[t]here is nothing in the Legislative history" to support Defendants' contentions. *See* Pl. Br., at 20. But the absence of evidence or legislative facts has "no significance." *Beach*, 508 U.S. at 315. Neither must a legislature ever "actually articulate . . . the purpose . . . supporting its classification." *Nordlinger*, 505 U.S. at 15; *Fritz*, 449 U.S. at 179. Plaintiffs also appear to argue that the ownership requirement is irrational because it disproportionately harms them compared to other "licensed Masters" who can afford to buy into an HVACR contractor. *See* Pl. Br., at 22. Short of membership in a protected class, however, "mere disparate impact is insufficient to make out a claim" under the Equal Protection Clause. *See, e.g.*, *In re Am. Family Enters.*, 256 B.R. 377, 426 (D.N.J. 2000) ("Even assuming, *arguendo*, that the $ 40 threshold has a disparate impact on lower income Class Members, it would not constitute a denial of equal protection, as the threshold has a rational basis.") (citing *Black v. Sec'y of Health & Hum. Servs.*, 93 F.3d 781, 787-89 (Fed. Cir. 1996)). Absent a protected characteristic, or a bare desire to harm certain people who are already politically vulnerable, courts will uphold government action "even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous." *Romer*, 517 U.S. at 632 (citations omitted).

Further, Plaintiffs argue that I should infer that the ownership requirement is irrational based on the exceptions for publicly traded companies and companies whose primary business is

not HVACR work. *See* Pl. Br., at 21. According to Plaintiffs, "[i]f the new definition of bona fide representative was changed to truly protect the health, safety and welfare of the public then, if anything, it should *not* have excluded individuals whose primary business is *not* HVACR work and [who are] therefore less experienced." *Id.* Plaintiffs' position lacks merit: the exceptions are not extensive enough to raise an inference of irrationality, or to suggest that Defendants' stated interests cannot conceivably be the Legislature's real ones. *Accord Eisenstadt*, 405 U.S. at 449 (holding that a Massachusetts statute limiting access to contraceptives to married couples was "so riddled with exceptions that [the purported purpose of] deterrence of premarital sex [could not] reasonably be regarded as its aim"). Defendants have also represented that "[p]ublicly traded corporations are answerable to stockholders, thereby providing the economic incentive necessary to ensure the HVACR work is performed consistent with the public health, safety and welfare," which is a conceivable basis for the statute's exception. Def. Br., at 15. That theory cannot be tested on rational basis review.

Plaintiffs contend that, in any event, the ownership requirement does not have a rational basis because, of the 209 professions in New Jersey, 205 do not require licensed persons to own stock. Whether or not that makes perfect sense, the point is that a court cannot throw out lines a legislature draws merely because a plaintiff disagrees (as a matter of social policy or economics) with where the line falls. *See Fritz*, 449 U.S. at 179 (holding that restraints on judicial review have added force "where the legislature must necessarily engage in a process of line-drawing"); *Beach*, 508 U.S. at 315 ("Defining the class of persons subject to a regulatory requirement . . . inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line, and the fact [that] the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration.") (quotations and citation

omitted); *Williamson*, 348 U.S. at 489 ("The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. The legislature may select one phase of one field and apply a remedy there, neglecting the others.").[3]

Finally, according to Plaintiffs, the ownership requirement is irrational because no other state treats "licensed HVACR Masters" that way. What Plaintiffs suggest here is that "[d]iscriminations of an unusual character especially suggest careful consideration to determine whether they are obnoxious to the constitutional provision." *Louisville Gas & Elec. Co. v. Coleman*, 277 U.S. 32, 37-38 (1928); *Romer*, 517 U.S. at 633. Even if New Jersey is an outlier in the sense Plaintiffs describe, rational basis review does not demand uniform laws across states. That New Jersey is the only state to impose an ownership requirement in its HVACR licensure scheme does not *ipso facto* give rise to a violation.

In all, without expressing any view on the soundness of the ownership requirement for bona fide representatives, Defendants have set forth a sufficient justification to survive rational basis review. I simply cannot "judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines; in the local

---

3        I also note that rational basis does not require a legislature to draw perfect lines. *See, e.g.*, *Schumacher v. Nix*, 965 F.2d 1262, 1273 (3d Cir. 1992) ("And at least under rational basis review, it is clear that states may draw classifications with substantially less than mathematical exactitude, even though, in practice, such classifications result in some inequality.") (quoting *Dandridge v. Williams*, 397 U.S. 471, 485 (1970)); *Metropolis Theater*, 228 U.S. at 69-70 ("To be able to find fault with a law is not to demonstrate its invalidity. It may seem unjust and oppressive, yet be free from judicial interference."). The broad deference that rational basis review provides "recogni[zes] that the process of democratic political decisionmaking often entails the accommodation of competing interests, and thus necessarily produces laws that burden some groups and not others." *Rogin v. Bensalem Twp.*, 616 F.2d 680, 687 (3d Cir. 1980).

economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendm[en]t." *Dukes*, 427 U.S. at 303 (citations omitted). Plaintiffs, in turn, cannot prevail by suggesting that they could write a superior piece of legislation, as "the Constitution does not require the [government] to draw the perfect line nor even to draw a line superior to some other line it might have drawn. It requires only that the line actually drawn be a rational line." *Armour v. Indianapolis*, 566 U.S. 579, 685 (2012). Contrary to Plaintiffs' assertions, even if there is ample reason to believe that the Legislature's judgment in passing the ownership requirement is incorrect, their claim still fails, because the requirement is not "truly arbitrary." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 613 (2008) (Stevens, J., dissenting) ("[T]he Equal Protection Clause proscribes arbitrary decisions—decisions unsupported by any rational basis—not unwise ones. Accordingly, a discretionary decision with any 'reasonably conceivable' rational justification will not support an equal protection claim; only a truly arbitrary one will."). Certainly, it is not "a classification of persons undertaken for its own sake, something the Equal Protection Clause does not permit." *Romer*, 517 U.S. at 635.

## B. Substantive Due Process Claim

Plaintiffs claim that the ownership requirement also violates the Due Process Clause. The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV. A statute violates due process if it infringes on "a fundamental right comprised within the term liberty," in which case strict scrutiny applies, or has no rational basis. *Sammon v. N.J. Bd. of Med. Exam'rs*, 66 F.3d 639, 645 (3d Cir. 1995); *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 846-47 (1992) ("The choice of a standard of review . . . turns on whether a 'fundamental right' is implicated."). Turning to the License Law at issue, "it is important to focus on what it does and does not do." *Sammon*, 66 F.3d at 644. The law does not prohibit "licensed Masters" from performing HVACR work, but merely regulates the

circumstances under which they may act as bona fide representatives for HVACR contractors. Such (rather minimal) "restrictions on the right to practice [in] a profession receive rational basis review rather than higher scrutiny." *Id.* at 646 (collecting cases); *B&G Constr. Co., Inc. V. Dir., OWCP*, 662 F.3d 233 (3d Cir. 2011) ("[I]n order to prove that a statute adjusting the burdens and benefits of economic life violates substantive due process, [a challenger] must show that [the legislature] acted in an arbitrary and irrational way by enacting the legislation."); *see also Ferguson v. Skrupa*, 372 U.S. 726, 730-31 (1963) ("Legislative bodies have broad scope to experiment with economic problems."). In any event, although Plaintiffs vaguely gesture at a fundamental right to engage in "the common occupations of life," they do not substantively dispute that rational basis review governs their due process challenge.

As in the equal protection context, where rational basis review is appropriate, a statute complies with the Due Process Clause if "(1) there is a legitimate state interest that (2) could be rationally furthered by the statute." *N.J. Retail Merch. Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 398 (3d Cir. 2012). Due process differs from equal protection only in that "the focus of due process analysis is not whether the [defendant] has irrationally distinguished between similarly situated classes, but whether it was irrational for the [defendant] to have passed the law at all and to have applied it to [the plaintiff]." *Rogin*, 616 F.2d at 689; *Associated Builders*, 376 F. Supp. 3d at 513. The analysis is otherwise identical. *See Sammon*, 66 F.3d at 646-47 (describing similarities). Accordingly, based on the foregoing analysis, Plaintiffs' Due Process claim fails for the same reasons as their Equal Protection claim.

## C. Privileges and Immunities Claim

Next, Plaintiffs claim that the ownership requirement violates the Privileges and Immunities Clause. *See* Pl. Br., at 27. The Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall abridge the privileges and immunities of citizens of the

United States." U.S. CONST. AMEND. XIV. Citing *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274 (1985), and *Tetra Techs., Inc. v. Harter*, 823 F. Supp. 1116, 1124 (S.D.N.Y. 1993), Plaintiffs insist that they have "the right to engage in legitimate professional activity throughout the United States without geographical restrictions." Pl. Br., at 27-28. And, because no other state apparently requires a "licensed Master" to own any amount of stock to register as a bona fide representative for an HVACR contractor, they conclude that New Jersey's License Law is unconstitutional.

Assuming for the purposes of this motion that HVACR services "bear[] on the vitality of the Nation as a single entity," *Baldwin v. Montana Fish & Game Comm'n*, 436 U.S. 371, 383 (1978), such that the Privileges and Immunities Clause applies, Plaintiffs' position is erroneous. "[L]ike many other constitutional provisions, the Privileges and Immunities Clause is not an absolute." *Toomer v. Witsell*, 334 U.S. 385, 396 (1948) ("States should have considerable leeway in analyzing local evils prescribing appropriate cures."). "If a state statute or regulation imposes identical requirements on residents and nonresidents alike and it has no discriminatory effect on nonresidents, it does not violate the Privileges and Immunities Clause." *Lutz v. City of York, Pa.*, 899 F.2d 255, 263 (3d Cir. 1990); *Tolchin v. Supreme Ct. of the State of N.J.*, 111 F.3d 1099, 1111 (3d Cir. 1997). Even where a statute discriminates along these lines, it is valid if "(i) there is a substantial reason for the difference in treatment; and (ii) the discrimination practiced against nonresidents bears a substantial relationship to the State's objective." *Piper*, 470 U.S. at 284.

Here, both resident and nonresident "licensed Masters" seeking to "practice their occupation within the State of New Jersey," Pl. Br., at 27, must comply with New Jersey's ownership requirement if they wish to register as a bona fide representative for an HVACR contractor. N.J.S.A. § 45:16A-2 draws no distinctions otherwise, and imposes no special burden

on out-of-state persons who work as "licensed Masters" in New Jersey, not even incidental ones.[4] *See Tolchin*, 111 F.3d at 1111–12 ("[W]e must distinguish between incidental discrimination against nonresidents and discrimination that imposes too heavy a burden."). Plaintiffs err because they assert—without ever demonstrating—that a mere difference in legal regime, compared to other states, constitutes a difference in *treatment* for out-of-staters. Far from that, under the Privileges and Immunities Clause, whatever requirements a state chooses to impose on its own citizens, it must impose them on out-of-state citizens too, and vice versa, unless there is a "substantial reason" for differential treatment that bears a "substantial relationship" to a state "objective." *Piper*, 470 U.S. at 284. What is more, to the extent that Plaintiffs challenge the ownership requirement as to HVACR *contractors* such as MMC—which, as a Missouri corporation, "can [allegedly] operate in every State except New Jersey" unless it gives its New Jersey bona fide representatives 1% in stock, *see* Pl. Br., at 27—"the Privileges and Immunities Clause has been interpreted not to protect corporations." *Tennessee Wine and Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2460-61 (2019); *Western & Southern Life Ins. Co. v. State Bd. of Equalization of Cal.*, 451 U.S. 648, 656 (1981); *Hemphill v. Orloff*, 277 U.S. 537, 548-50 (1928). For these reasons, there is no Privileges and Immunities Clause violation at hand here.

### D. Commerce Clause Claim

Finally, Plaintiffs claim that the ownership requirement violates the Commerce Clause. The Constitution provides that "Congress shall have Power . . . to regulate Commerce . . . among the several States." U.S. CONST. ART. I, § 8. Although framed as a positive grant of Congressional power, Article I also contains "an implied limitation on the power of the States to interfere with or impose burdens on interstate commerce," often called the "dormant" Commerce Clause. *Western*

---

4      It also does not appear that New Jersey permits only residents to become "licensed Masters" in the state. *See generally* N.J.S.A. 45:16A-1, *et seq*.

*& Southern Life*, 451 U.S. at 652. The dormant Commerce Clause "prohibits economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *New Energy Co. of Indiana v. Limbach*, 486 U.S. 269, 273 (1988); *Tennessee Wine*, 139 S. Ct. at 2459.

To determine whether a statute violates the dormant Commerce Clause, courts first ask "whether heightened scrutiny applies, and, if not, then . . . whether the law is invalid under the *Pike v. Bruce Church, Inc.*, 370 U.S. 139 (1970), balancing test." *American Express*, 669 F.3d at 373. Heightened scrutiny is appropriate where a law "directly regulates or discriminates against interstate commerce." *C&A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 390 (1994). In such a case, the state bears the burden of proof, and a court may strike down the law without further inquiry. *See Brown-Forman Distillers Corp. v. New York Liquor Auth.*, 476 U.S. 573, 578-79 (1986); *Maine v. Taylor*, 477 U.S. 131 (1986). On the other hand, under *Pike*, "[w]here the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." 397 U.S. at 142 (citation omitted). Because in purpose and effect the License Law treats all HVACR contractors doing work in New Jersey the same, whether they are based in-state or out-of-state, I apply *Pike*. *Accord Heffner v. Murphy*, 745 F.3d 56, 74 (3d Cir. 2014) ("[W]e cannot agree that the [ ] ownership provisions 'erect a barrier' protecting in-state interests from out-of-state competition that would trigger heightened scrutiny."). Plaintiffs devote much of their briefs to explaining what the heightened standard of review is, *see* Pl. Opp., at 14-17, but they never argue why it should apply in this case. Plaintiffs instead repeat their contention that the requirement does not sufficiently further "local interests," *id.* at 18-19, and rely on cases where courts balance "local need[s]" against the impact

of "seemingly neutral requirement[s]," which is *Pike* in so many words. *See id.* at 16-17 (quoting *Tetra Tech.*, 823 F. Supp. at 1123-24, for how to analyze situations where "no discrimination is involved").

The ownership requirement here survives *Pike* scrutiny. While there is perhaps an incidental burden on *Plaintiffs' particular form of commerce*—in that an HVACR contractor must give up a portion of the company to a "licensed Master" to do business in New Jersey, and a "licensed Master" who cannot become a part-owner will not be a bona fide representative, losing whatever the ensuing benefits are—that quite simply "creates no incidental burdens on *interstate* commerce." *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 35 F.3d 813, 827 (3d Cir. 1994) (emphasis added). Even if it did, the burden would not be "clearly excessive" under *Pike*: 1% is a relatively small fraction of ownership, HVACR contractors may otherwise utilize local "Licensed Masters" the same as before, and "Licensed Masters" may continue to work in New Jersey (and elsewhere) without issue.

Plaintiffs' arguments to the contrary do not carry water. At bottom, they disagree with the way in which New Jersey law now requires HVACR contractors to operate. But the Commerce Clause does not protect Plaintiffs' preferred business arrangement. *See, e.g.*, *Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 127-28 (1978) (rejecting "[the] notion that the Commerce Clause protects the particular structure or methods of operation in a [ ] market . . . . [T]he Clause protects the interstate market."); *McBurney v. Young*, 667 F.3d 454, 469 (4th Cir. 2012) (rejecting dormant Commerce Clause challenge where state law "prevent[ed] [plaintiff] from using his 'chosen way of doing business,' but [did] not prevent him from engaging in business in the [State]"); *Heffner*, 745 F.3d at 76 (same). Plaintiffs likewise do not like that the License Law may end up favoring some "mom and pops" over "big box stores." Yet, again, while that may

burden Plaintiffs' current or desired business practices, the Commerce Clause does not protect "particular interstate firms . . . from prohibitive or burdensome regulations." *Exxon*, 437 U.S. at 128 (citing *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 806 (1976)).

Similar to the Privileges and Immunities Clause, the dormant Commerce Clause is not a mandate for uniform national policies, just non-discriminatory state policies, and the inquiry ends once it is clear that no such discrimination exists. *See, e.g.*, *Tennessee Wine*, 139 S. Ct. at 2460 (describing the importance of "removing state trade barriers"); *Granholm v. Heald*, 544 U.S. 460, 472 (2005) ("The mere fact of nonresidence should not foreclose a producer in one State from access to markets in other States."); *Hughes v. Oklahoma*, 441 U.S. 322, 325-326 (1979) (describing how the dormant Commerce Clause helps "avoid the tendencies toward economic Balkanization that had plagued relations among the Colonies and later among the States under the Articles of Confederation"); *Dean Milk Co. v. Madison*, 340 U.S. 349, 356 (1951) (cautioning against low-level trade wars, which "invite a multiplication of preferential trade areas destructive of the very purpose of the Commerce Clause"). Plaintiffs' dormant Commerce Clause claim fails for these reasons.

## IV.    CONCLUSION

Plaintiffs' Equal Protection claim fails because New Jersey's 1% ownership requirement for bona fide representatives has a rational basis. Plaintiffs' Due Process claim fails for the same reason. Plaintiffs' Privileges and Immunities claim and dormant Commerce Clause claim fail because the ownership requirement neither discriminates against out-of-state HVACR contractors or "Licensed Masters," nor imposes more than an incidental burden on interstate commerce. I **GRANT** Defendants' Motion for Summary Judgment, **DENY** Plaintiffs' cross-Motion, and **DISMISS** all claims.

**DATED**: May 28, 2021                                                    /s/ Freda L. Wolfson

Hon. Freda L. Wolfson
U.S. Chief District Judge